**FILED**

ORIGINAL

JUN - 6 2016

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

CLERK
US DISTRICT &
BANKRUPTCY COURTS

2016 JUN -6  P 9 50

RECEIVED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JANE DOE 1, et al.,**

**Plaintiffs,**

- v. -

**THE CITY OF NEW YORK, et. al.,**

**Defendants.**

Case: 1:16-mc-01195
Assigned To : Leon, Richard J.
Assign. Date : 6/6/2016
Description: Misc.

**Case No: 15-cv-3849 (AKH)**

**Misc. Filing Related to Matter in
United States District Court For
The Southern District of New York**

---

### THE MOSS GROUP'S MOTION TO QUASH PLAINTIFFS' THIRD PARTY SUBPOENA *DUCES TECUM*

Interested Party The Moss Group, by and through undersigned counsel, pursuant to Rule 45 of the Federal Rules of Civil Procedure and the Court's Order dated May 25, 2016, respectfully asks this Court for an Order quashing the third party subpoena *duces tecum* issued by Plaintiffs in the above-captioned matter. The Moss Group seeks to quash Plaintiffs' subpoena *duces tecum* issued on April 15, 2016, as it seeks privileged material, trade secrets, and other confidential material from The Moss Group, a third party in this matter.

Counsel for The Moss Group recently had a very productive conversation with counsel for the Plaintiffs regarding the subject matter of this Motion. It may be the case that the parties are able to conciliate all outstanding issues without Court intervention. Given this fact, we respectfully suggest that the Court withhold ruling for at least 48 hours to permit the parties to continue discussions about a potential resolution of the issues discussed below.

//

//

//

//



RECEIVED
Mail Room

JUN  7 2016

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

Respectfully submitted,

/s/

Barry Coburn, DC Bar No. 358020
Coburn & Greenbaum, PLLC
1710 Rhode Island Ave, NW
Second Floor
Washington, DC 20036
Tel: 202-470-1689
barry@coburngreenbaum.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JANE DOE 1, et al.,

        Plaintiffs,

  - v. -

THE CITY OF NEW YORK, et. al.,

        Defendants.

**Case No: 15-cv-3849 (AKH)**

**Misc. Filing Related to Matter in
United States District Court For
The Southern District of New York**

**THE MOSS GROUP'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO QUASH PLAINTIFFS' THIRD PARTY SUBPOENA *DUCES TECUM***

Interested Party The Moss Group, by and through undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion to Quash Plaintiffs' subpoena *duces tecum*.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

The Moss Group and its founder, Anadora Moss, seek to create a safe environment for individuals that are incarcerated at correctional institutions throughout the United States. The focus of The Moss Group is on creating an atmosphere of sexual safety. In order to achieve this goal, The Moss Group must be able to engage corrections staff and leadership in open and frank conversations about sexual safety. These discussions must be confidential in order to obtain the level of trust needed to address the sensitive issue of sexual safety within correctional institutions. As noted by Anne Katherine Seymour, an individual with 30 years' experience as a crime victims advocate specializing in corrections-based victim services, "victim advocates need the assistance of The Moss Group in order to ensure sexual safety starts at the level of leadership and makes its way down through the ranks to correctional officers." *See* Exhibit A, Affidavit

of Anne Katherine Seymour[1] at ¶ 15.  The subpoena by Plaintiffs in this action, attached

hereto as Exhibit B, jeopardizes The Moss Group's ability to effectively address sexual

safety within correctional institutions.

## FACTUAL BACKGROUND

**Plaintiffs' Complaint**

Plaintiffs filed this action on May 19, 2015 in the United States District Court for

the Southern District of New York.  A copy of Plaintiffs' Compliant is attached hereto as

Exhibit C.  Plaintiffs have alleged a number of causes of action against Defendants the

City of New York and Benny Santiago, a Correction Officer employed by the City of

New York.  Plaintiffs claim that corrections officers at Rikers Island, a group of pretrial

detention facilities operated by the City of New York, exploit their positions to rape and

otherwise sexually abuse women in their custody.  Plaintiffs claim that the abuse is only

possible because the City of New York has ignored repeated warnings and has enabled a

culture of complacency.  Plaintiffs Jane Doe 1 and Jane Doe 2 allege that they were

repeatedly raped and sexually abused by Defendant Benny Santiago, and that Mr.

Santiago threatened and punished Plaintiffs in connection with the alleged abuse.

Defendants City of New York and Benny Santiago have denied the allegations and filed

answers.

**Work Performed by The Moss Group for City of New York**

As set forth in the affidavit of Anadora Moss, attached hereto as Exhibit D, The

Moss Group provides consultation and technical assistance to correctional institutions.

---

[1] We were unable to obtain Ms. Seymour's signature due to her limited availability
related to the illness of a family member.  We respectfully request leave to substitute the
affidavit for one that is signed by Ms. Seymour as soon as she is able to do so.

The Moss Group provides a number of services to its client related to increasing sexual safety within correctional institutions and compliance with the Prison Rape Elimination Act of 2003 ("PREA"). The Moss Group is considered a subject matter expert in PREA and has assisted clients in all 50 states, including adult, juvenile, and community-based corrections.

In or around April 2014, The Moss Group entered into an agreement with the City of New York to provide services related to PREA compliance and address issues of sexual safety within its correctional institutions. The issue of PREA compliance and sexual safety are of particular concern to the City of New York Board of Corrections, New York City Counsel, and to the Mayor of New York City. Pursuant to the agreement, The Moss Group and its consultants spent hundreds of hours at seven facilities within the City of New York Department of Corrections. The Moss Group authored a Sexual Safety Assessment report in or around June 2015. The Sexual Safety Assessment made a number of findings and recommendations related to sexual safety and PREA compliance within the City of New York Department of Corrections. It is our understanding that the City of New York has provided the June 2015 report to Plaintiffs during discovery in this matter. Accordingly, what is principally at issue here are the confidential investigative materials The Moss Group generated while preparing the report.

## ARGUMENT

The Moss Group respectfully submits that Plaintiffs' subpoena must be quashed as it seeks privileged document, trade secrets, and other confidential material. This position is not taken lightly. While The Moss Group may have the same goals as Plaintiffs with respect to sexual safety within the City of New York Department of

Corrections, it must take its current position in order to achieve this objective within the City of New York and other institutions across the country. The Moss Group's core mission is to address sexual safety within correctional settings. The subpoena seeks trade secrets and confidential material, including working papers of The Moss Group related to the services provided to the City of New York. These working papers consist of notes of meetings between The Moss Group and corrections officers, staff, leadership, and inmates within the City of New York Department of Corrections. We have joined in the position of the City of New York that this material is highly confidential and protected by both the attorney client privilege and the deliberative process. The worked performed by The Moss Group sought to address issues of sexual safety and PREA compliance, a federal statute related to sexual safety within correctional institutions. While it was performing it services, The Moss Group functioned as an agent and/or consultant of attorneys for the City of New York. The services provided are akin to an internal investigation. The objections made by the City of New York reference documents created by The Moss Group in connection with its work for the City of New York. Accordingly, we respectfully submit that the material sought is privileged and join in the objections made by the City of New York.

"A court may quash or modify a subpoena if it requires disclosure of trade secrets or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(c)(3)(B)(i). In making a determination of whether material is protected from disclosure "courts must evaluate whether the information being sought is commercial information that should not be disclosed to the public." *Falicia v. Advanced Tenant Servs.*, 235 F.R.D. 5, 7 (D.D.C 2006) (citing *Mannington Mills, Inc. v. Armstrong World*

*Indus.*, 206 F.R.D. 525, 528 (D.Del. 2002). Material should be shielded from disclosure if "release of the information would unfairly harm the disclosing party's ability to compete in the marketplace." *Falicia*, 235 F.R.D. at 7 (internal citation omitted). If a determination is made that the subpoena seeks commercial information "the burden shifts to the party seeking the information to show that obtaining the information is both relevant and necessary." *Falicia*, 235 F.R.D. at 7 (citing *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 740-41 (Fed. Cit. 1987)). If the party seeking the information makes the showing "the court must balance the two competing interests and determine what aspect of the subpoena, if any, will be enforced." *Falicia*, 235 F.R.D. at 7 (internal citation omitted).

Disclosure of the material sought in Plaintiffs' subpoena would cause significant harm to The Moss Group's ability to compete in the marketplace. First, disclosure of the material, including the proprietary protocol described below and in Exhibits D and F, will allow other individuals and entities that perform similar services to benefit from the unique approach and services currently offered by The Moss Group. Second, with respect to the City of New York, the effectiveness of future work performed by the Moss Group will be substantially diminished. Third, disclosure will have a chilling effect on correctional institutions and will limit both The Moss Group's ability to obtain clients, as well as the effectiveness of the services it provides.

**The Moss Group's Protocol**

The subpoena includes two requests:

Request 1. All documents related to Your assessment(s) of Sexual Misconduct in any     jail under the supervision of the City of New York, including as contained in the Sexual Safety Assessment Report dated June 2015 by The Moss Group, Inc., and

Request 2:  All documents concerning Sexual Misconduct at RMSC, including but not        limited to: (1) all draft reports or other interim materials created by You; and (ii) all        working papers, interview statements and summaries, or other materials supporting Your        assessment(s) of RMSC, including as contained in the Sexual Safety Assessment Report        dated June 2015 by The Moss Group, Inc.

While it is not our position that all material potentially responsive to the subpoena is

confidential and/or a trade secret, a number of the documents used by The Moss Group in

conducting the June 2015 Sexual Safety Assessment are proprietary trade secrets and

confidential.

As further discussed in Exhibits D, The Moss Group has created an extensive

protocol over the past 20 years in connection with the services it provided.  The Moss

Group relies on the protocol when performing a Sexual Safety Assessment and tasks

related to PREA compliance.  This protocol is unique to The Moss Group and is not

publicly available.  The protocol consists of a number of documents that are used to

identify themes, record observations, and make recommendations related sexual safety

and PREA compliance.  The protocol is customized for each client.  The protocol has

been modified over the past 20 years to reflect and implement new information obtained

through research and practice.

The protocol and approach reflected therein are unique to The Moss Group.  The

material is used by The Moss Group on all of its projects and is instrumental in

conducting its services. It would be extremely difficult for any competitor of The Moss

Group to replicate the protocol as it contains 20 years of service and reflects both the

experience of the company, as well as the contributions of employees and consultants.

The protocol is confidential and only those working for or with The Moss Group are

afforded access to the material.  In fact, employees and consultants working with clients

are only given the portion of the material that are specific to their responsibility on an individual project.

**Impact Of Disclosure On Future Dealings With The City of New York**

The disclosure of the material sought in the subpoena will halt the progress that has been made within the City of New York Department of Corrections and make it nearly impossible for the remaining objectives related to sexual safety to be achieved. In addition to services related to the June 2015 Sexual Safety Assessment, The Moss Group has been retained by the City of New York to perform additional services related to sexual safety and PREA compliance. In addition, The Moss Group is in discussions for additional work with The City of New York.

Compliance with the subpoena would hinder The Moss Group's ability to perform the remaining tasks for the City of New York and will interfere with the current negotiation for future work. The Moss Group took extraordinary measures to gain the trust and confidence of staff and leadership within the City of New York Department of Corrections. In order to do so, The Moss Group's staff and consultants represented that discussions were to be kept confidential and statements were not to be attributed to individual staff. Should compliance with the subpoena be required, the working notes and materials would be disclosed and these assurances of confidentiality, which were essential in order to extract the cooperation that resulted in the report, would be nullified. This certainly would halt any cooperation between The Moss Group and staff and leadership and limit the ability to perform additional services, which would be in derogation of the public policy of addressing the extraordinarily serious problem of sexual assault in the correctional context. While it appears that the City of New York has

made some progress with respect to the items listed in the June 2015 Sexual Safety

Assessment, the staff and leadership would cease further cooperation with The Moss

Group if the material were disclosed.

**Impact of Disclosure On The Moss Group's Reputation And Ability To Serve**
**Clients**

Requiring disclosure of the material created by The Moss Group would have a

chilling effect on correctional institutions' ability and willingness to address sexual safety

and PREA compliance. A significant factor in allowing The Moss Group to perform its

services is the trust that is created between The Moss Group and the leadership and staff

within its clients' facilities. Should this trust be abrogated by the disclosure of the

communications between staff and The Moss Group, The Moss Group would not be able

to address the public policy goals of itself and its clients. The issues noted here with

respect to cooperation between The Moss Group and the City of New York would be

manifested at all of the correctional institutions where The Moss Group works.

The Moss Group has worked with correctional institutions through the United

States to address sexual safety and PREA compliance and has seen great success. One

example is The Moss Group's work with the Department of Corrections for the District

of Columbia (DCDOC). An initial survey found at DCDOC that 75% of staff believed

they would be retaliated against if they reported incidents of sexual abuse. *See* Exhibit E,

Affidavit of Thomas N. Faust at ¶ 10. The key to the effectiveness of The Moss Group's

work is confidentiality. As noted Mr. Faust, Director of DCDOC, "without this

[confidentiality], or by divulging sources, the safe reporting culture [DCDOC has]

worked so hard to develop, would be lost." *Id.* at ¶ 12. "Any violation of the trust and

confidentiality that [The Moss Group] has built would be very detrimental to DCDOC."
*Id.* at ¶ 11.  The level of trust that has been built between The Moss Group and staff and
inmates at DCDOC would be lost and the "safe reporting culture" would be jeopardized
if the confidentiality of communications is removed.  *Id.* at 10.

**Impact of Disclosure On Public Policy**

Disclosure of the material sought in the subpoena violates public policy and will
inhibit The Moss Group's work with other correctional institutions.  It is a significant
undertaking for a correctional institution to seek assistance to address the issue of sexual
safety.  Further, agreeing to talk to outside consultants about such sensitive issues is met
with resistance by both staff and leadership.  If The Moss Group is not able to assure the
staff and leadership that their communications will be confidential, it is very unlikely that
they will receive any cooperation from correctional institutions.

The Moss Group takes an individualized approach to the services it provides for
its client.  Cheryln Kaye Townsend, former Executive Director of the Texas Youth
Commission, believes that The Moss Group "is the best organization to call upon for
assistance when you are trying to engage in system and culture change" and that they
"put together consultant teams that are leaders in their fields, customized to fit the
specialized services/client population of a facility, and prepared to look deeply at agency
operations and culture.  *See* Exhibit F, Affidavit of Cherlyn Kaye Townsend at ¶ 14.
With respect to confidentiality, Ms. Townsend believes that her staff and youth at the
time would not have been "so open about not only sexual safety but also agency
operations, their fears and their hopes if they had not trusted the process of
confidentiality."  *Id.* at ¶ 24.

9

Kim T. Thomas, former General Counsel and Commissioner of the Alabama Department of Corrections ("ADOC"), has "observed the difficult challenges facing correctional staff and agencies in implementing and maintaining initiatives related to improving sexual safety and compliance with PREA standards." See Exhibit G, Affidavit of Kim T. Thomas at ¶ 9. In his role as Commissioner, Mr. Thomas found that "it was challenging to motivate staff to embrace change and implement new practices. *Id.* He found that "confidentiality between [The Moss Group] team and [his] staff was essential in order to openly discuss issues that needed addressing and in ultimately making ADOC's prisons safer." *Id.* at ¶ 10. We believe this situation is not unique to ADOC and requiring compliance of the subpoena will deter other correctional institutions from addressing issues of sexual safety.

We have raised the public policy considerations of disclosure of the material with the Department of Justice. We believe this issue is of concern to the Department of Justice, as the Bureau of Justice Assistance provides grants to correctional institutions in order to address sexual safety and PREA compliance. In addition, the Department of Justice trains and certifies auditors to perform PREA compliance audits. We have mentioned the potential impact a ruling from the Court on this issue may have with respect to guidance provided to PREA auditors regarding his or her work notes and the obligation to produce the material. The Department of Justice has expressed general interest in the issue and we plan to meet with them in the coming weeks to further discuss the matter.

## CONCLUSION

For the foregoing reasons, Third Party The Moss Group asks this Court to quash the third party subpoena *duces tecum* issued by Plaintiffs. Should the Court deny this motion, we respectfully request that the Court allow The Moss Group a reasonable amount of time to seek a protective order limiting public disclosure of the information at issue prior to requiring compliance with the subpoena.

Respectfully submitted,

/s/ _____ / marc Eisenstein

Barry Coburn, DC Bar No. 358020
Coburn & Greenbaum, PLLC
1710 Rhode Island Ave, NW
Second Floor
Washington, DC 20036
Tel: 202-470-1689
barry@coburngreenbaum.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of June 2016, I caused to be delivered a true and accurate copy of the foregoing via first-class mail to all counsel of record.

/s/
Barry Coburn

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JANE DOE 1, et al.,** | Case: 1:16-mc-01195 |
| | Assigned To : Leon, Richard J. |
| **Plaintiffs,** | Assign. Date : 6/6/2016 |
| - v. - | Description: Misc. |
| **THE CITY OF NEW YORK, et. al.,** | **Case No: 15-cv-3849 (AKH)** |
| | **Misc. Filing Related to Matter in** |
| | **United States District Court For** |
| | **The Southern District of New York** |
| **Defendants.** | |

### [PROPOSED] ORDER

Upon consideration of Interested Party The Moss Group's Motion to Quash Plaintiff's third party subpoena *duces tecum*, any opposition filed thereto, and the entire record, it is hereby:

**ORDERED** that The Moss Group's Motion is **GRANTED**, and it is further

**ORDERED** that the April 15, 2016 subpoena *duces tecum* issued by Plaintiff is quashed.

**SO ORDERED.**

_____
United States District Court Judge

**Copies to all counsel of record**